UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

LINDA L. MCCLAIN-NELSON,

       Plaintiff,                            Civil Action No. 12-14490

     v.                                   District Judge Victoria A. Roberts
                                          Magistrate Judge Laurie J. Michelson

COMMISSIONER OF
SOCIAL SECURITY,

       Defendant.
_____/

**REPORT AND RECOMMENDATION TO
DENY PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT [11] AND
GRANT DEFENDANT'S MOTION FOR SUMMARY JUDGMENT [13]**

Plaintiff Linda McClain-Nelson appeals Defendant Commissioner of Social Security's ("Commissioner") denial of her application for disability insurance benefits. (*See* Dkt. 1, Compl.) Before the Court for a report and recommendation (Dkts. 2, 4) are the parties' cross-motions for summary judgment (Dkts. 11, 13). For the reasons set forth below, this Court concludes that substantial evidence supports the decision of the administrative law judge. The Court therefore RECOMMENDS that Plaintiff's Motion for Summary Judgment (Dkt. 11) be DENIED, that Defendant's Motion for Summary Judgment (Dkt. 13) be GRANTED, and that, pursuant to 42 U.S.C. § 405(g), the decision of the Commissioner of Social Security be AFFIRMED.

**I. BACKGROUND**

Plaintiff has a GED and previously worked as an industrial seamstress and as a housekeeper at a retirement community. (Tr. 26, 36.) Because of pain in her back and nerve loss (primarily in her left hand), Plaintiff claims that she is unable to work. (Tr. 26, 32-24.)

### A. Procedural History

On November 20, 2008, Plaintiff applied for disability insurance benefits asserting that she became unable to work on August 6, 2008. (Tr. 102-03.) The Commissioner initially denied Plaintiff's disability application on December 26, 2008. (Tr. 40.) Plaintiff then requested an administrative hearing, and on July 1, 2010, she appeared with counsel before Administrative Law Judge Rebecca LaRiccia, who considered her case *de novo*. (Tr. 22-39.) In a December 9, 2010 decision, the ALJ found that Plaintiff was not disabled within the meaning of the Social Security Act. (*See* Tr. 18.) The ALJ's decision became the final decision of the Commissioner on August 13, 2012, when the Social Security Administration's Appeals Council denied Plaintiff's request for review. (Tr. 1-4.) Plaintiff filed this suit on October 10, 2012. (Dkt. 1, Compl.)

### B. Testimony at the Hearing Before the ALJ

#### *1. Plaintiff's Testimony*

Plaintiff testified that she worked as an industrial seamstress and was required to lift approximately 50-75 pounds loading and unloading pallet jacks and two wheels onto her sewing table. (Tr. 35.) After her work as a seamstress, Plaintiff worked as a housekeeper at a retirement community, but alleged that she had to quit because of back pain. (Tr. 26.) After she quit, Plaintiff went to physical therapy for about three weeks, and had only returned to work for three days when her back pain returned. (Tr. 26-27.) Plaintiff reported that she "couldn't lift anything to stock my cart. I couldn't push it. I could barely walk on the third day that I was there. I said, I can't do it, I am sorry. And I went home and went to bed." (Tr. 27.) Plaintiff has not worked since. (*Id.*)

Plaintiff is receiving an epidural shot every five to six months to help with pain management and is taking Ibuprofen for swelling and to reduce pain in her back. (*Id.*) Plaintiff has some side

effects from the Ibuprofen, including stomach aches, but reports that the epidural shots have helped to relieve her neck and shoulder pain for about five months after every shot. (Tr. 27-28.)

Although her neck and shoulder pain has subsided, Plaintiff testified that she still cannot lift things or stand for a sustained period of time without a burning pain in her lower and middle back. (Tr. 28-29.) Plaintiff reported that her back starts to hurt if she stands longer than 15-20 minutes, or sits longer than 15 minutes. (Tr. 29.) Plaintiff testified that she lies down at least one time per hour for 15-20 minutes at a time to alleviate her back pain. (Tr. 30, 36.)

Plaintiff also reported that she uses a cane, but that it is not prescribed by a doctor. (Tr. 36.) Plaintiff indicated that she has difficulty with household chores and driving more than one hour. (Tr. 30-31.) Plaintiff also stated that the week before her administrative hearing her legs started to swell. (Tr. 31.) She indicated that she could walk from "one corner to the next . . . about a football field or 12 feet." (Tr. 34.) Walking any further, though, would cause her back to hurt. (*Id.*) Plaintiff testified that her primary care physician, Dr. Kirti Jain, referred her for a surgical evaluation, but that the surgeon indicated "unless you can't physically walk, I would leave it alone until it got that bad." (Tr. 34.) Plaintiff indicated that her back pain at its worst on a scale of one-to-ten is a "twelve," but on a day-to-day basis she rated it a six. (Tr. 35.)

Plaintiff also reported nerve damage in her left hand from her ring finger and pinky finger up to her wrist bone. (Tr. 32.) Plaintiff indicated that she is right-handed, but that she experiences constant "numbness and tingling" in the left hand which causes her to drop things a lot. (Tr. 32-33.) When the ALJ asked her about her hands, Plaintiff reported a loss of strength in both hands, but did not know "if it [was] due to lack of exercise or work or nerve damage." (Tr. 36.) Plaintiff reported that she could carry a half-gallon of milk from the refrigerator to the counter. (Tr. 33-34.)

### *2. The Vocational Expert's Testimony*

The ALJ solicited testimony from a vocational expert ("VE") to determine whether there are any skills that transfer from Plaintiff's past jobs to work at the sedentary level. (Tr. 38.) The VE indicated that there are no skills that would transfer to the sedentary level. (*Id*.)

## II. THE ALJ'S APPLICATION OF THE DISABILITY FRAMEWORK

Under the Social Security Act (the "Act"), disability insurance benefits and supplemental security income "are available only for those who have a 'disability.'" *See Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007). The Act defines "disability," in relevant part, as the

> inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months.

42 U.S.C. § 423(d)(1)(A); 20 C.F.R. § 404.1505 (DIB); 20 C.F.R. § 416.905 (SSI).

The Social Security regulations provide that disability is to be determined through the application of a five-step sequential analysis:

> 1. If claimant is doing substantial gainful activity, he is not disabled.
>
> 2. If claimant is not doing substantial gainful activity, his impairment must be severe before he can be found to be disabled.
>
> 3. If claimant is not doing substantial gainful activity and is suffering from a severe impairment that has lasted or is expected to last for a continuous period of at least twelve months, and his impairment meets or equals a listed impairment, claimant is presumed disabled without further inquiry.
>
> 4. If claimant's impairment does not prevent him from doing his past relevant work, he is not disabled.
>
> 5. Even if claimant's impairment does prevent him from doing his past relevant work, if other work exists in the national economy that accommodates his residual functional capacity and vocational factors

>    (age, education, skills, etc.), he is not disabled.

*Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 529 (6th Cir. 1997); *see also* 20 C.F.R. §§ 404.1520, 416.920. "The burden of proof is on the claimant throughout the first four steps . . . . If the analysis reaches the fifth step without a finding that the claimant is not disabled, the burden transfers to the [Commissioner]." *Preslar v. Sec'y of Health and Human Servs.*, 14 F.3d 1107, 1110 (6th Cir. 1994).

At step one, ALJ LaRiccia found that Plaintiff had not engaged in substantial gainful activity since the alleged disability onset date of August 6, 2008. (Tr. 13.) At step two, she found that Plaintiff had the following severe impairment: cervical radiculitis with mild degenerative arthritis changes. (*Id.*) Next, the ALJ concluded that Plaintiff did not have an impairment that meets or medically equals a listed impairment. (Tr. 14.) Between steps three and four, the ALJ determined that Plaintiff had the residual functional capacity to "perform the full range of light work as defined in 20 C.F.R. 404.1567(b)." (*Id.*) At step four, the ALJ found that Plaintiff was capable of performing her past relevant work as a sewing machine operator. (Tr. 17.) The ALJ therefore concluded that Plaintiff was not disabled as defined by the Social Security Act from the alleged onset date through the date of her decision. (Tr. 17-18.)

## III. ANALYSIS

### A. Standard of Review

This Court has jurisdiction to review the Commissioner's final administrative decision pursuant to 42 U.S.C. § 405(g). Judicial review under this statute is limited: the Court "must affirm the Commissioner's conclusions absent a determination that the Commissioner has failed to apply the correct legal standard or has made findings of fact unsupported by substantial evidence in the record." *Longworth v. Comm'r of Soc. Sec.*, 402 F.3d 591, 595 (6th Cir. 2005) (internal quotation

marks omitted).

Substantial evidence is "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007) (internal quotation marks omitted). If the Commissioner's decision is supported by substantial evidence, "it must be affirmed even if the reviewing court would decide the matter differently and even if substantial evidence also supports the opposite conclusion." *Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994) (internal citations omitted); *see also Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986) (en banc) (noting that the substantial evidence standard "presupposes . . . a zone of choice within which the decisionmakers can go either way, without interference by the courts" (internal quotation marks omitted)).

When reviewing the Commissioner's factual findings for substantial evidence, the Court is limited to an examination of the record and must consider that record as a whole. *Bass v. McMahon*, 499 F.3d 506, 512-13 (6th Cir. 2007); *Wyatt v. Sec'y of Health & Human Servs.*, 974 F.2d 680, 683 (6th Cir. 1992). The Court "may look to any evidence in the record, regardless of whether it has been cited by the Appeals Council." *Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 535 (6th Cir. 2001). There is no requirement, however, that either the ALJ or this Court discuss every piece of evidence in the administrative record. *Kornecky v. Comm'r of Soc. Sec.*, 167 F. App'x 496, 508 (6th Cir. 2006). Further, this Court does "not try the case de novo, resolve conflicts in evidence, or decide questions of credibility." *Bass*, 499 F.3d at 509; *Rogers*, 486 F.3d at 247.

### B. Plaintiff's Statement of Errors

Plaintiff asserts that the ALJ erred in two ways: (1) by failing to give controlling weight to

her treating physician, Dr. Jain, who offered an opinion that supported a finding of disability; and (2) by finding Plaintiff's statements to be not credible to the extent they were inconsistent with the RFC determination. (Pl.'s Mot. Summ. J. at 11-18.)

*1. The Weight Given to Plaintiff's Treating Physician, Dr. Jain*

In her first claim of error, Plaintiff argues that the ALJ failed to give the appropriate weight to the opinion of her primary care physician, Dr. Jain, whose opinion supported a finding of disability. (Pl.'s Mot. Summ. J. at 11-14.) Plaintiff specifically argues that the ALJ erred when she concluded that Dr. Jain failed to consider "any objective evidence in rendering her opinion" and assigned Dr. Jain's opinion "little weight." (Tr. 17.) Instead, Plaintiff claims that Dr. Jain's "detailed questionnaires" specifically referred to two MRIs of Plaintiff's cervical and thoracic spine that supported Dr. Jain's opinion. (Tr. 405, 441.) Plaintiff also claims that Dr. Jain referenced "clinical abnormalities" of severe pain, radiating pain to arms and legs, pain in the neck and hand, and tenderness in the lumbosacral spine. (Tr. 404, 440.) Because of this, says Plaintiff, the opinion of Dr. Jain is "well-supported" by extensive clinical and diagnostic abnormalities and should have been given controlling weight. (Pl.'s Mot. Summ. J. at 13.) The Commissioner argues that the ALJ properly discounted Dr. Jain's opinion because it was not well-supported by acceptable clinical and laboratory diagnostic techniques and was inconsistent with other evidence in the record. (Def.'s Mot. Summ. J. at 4-9.)

Under the treating-source rule, the opinions of a claimant's treating physicians are generally given more weight than those of non-treating physicians because treating sources "are likely to be the medical professionals most able to provide a detailed, longitudinal picture of [the claimant's] medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be

7

obtained from the objective medical findings alone or from reports of individual examinations, such as consultative examinations or brief hospitalizations." 20 C.F.R. §§ 404.1527(c) (2), 416.927(c)(2). In fact, if the opinion of a treating physician is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in your case record," then an ALJ must give the opinion "controlling" weight. 20 C.F.R. §§ 404.1527(d)(2) 416.927(d)(2); *see also Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544 (6th Cir. 2004). And when an ALJ does not accord the treating physician's opinion controlling weight, he must remember that the opinion is still entitled to deference, and consider the non-exhaustive list of factors set forth at 20 C.F.R. §§ 404.1527(d), 416.927(d) in determining how much weight to assign the opinion. *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 242 (6th Cir. 2007); *accord Gayheart v. Comm'r of Soc. Sec.*, 710 F.3d 365, 376 (6th Cir. 2013).

Turning to the first step of the analysis, ALJ LaRiccia noted that Dr. Jain's medical source statement indicated that Plaintiff could not sit or stand for more than one hour in an average work day, and that Plaintiff must get up to move every ten minutes. (Tr. 17, 406.) Dr. Jain further restricted Plaintiff from lifting or carrying anything over five pounds. (Tr. 17, 407.) Dr. Jain also noted that Plaintiff had marked limitations in both hands and that she is not able to grasp, turn, or twist objects and could not use her arms overhead. (Tr. 17, 407-08.) Moreover, according to Dr. Jain, Plaintiff is moderately limited in using her fingers and hands for fine manipulation. (Tr. 17, 408.) Dr. Jain opined that Plaintiff is in "constant" pain and must frequently take unscheduled breaks and will miss work more than three times per month; which, in the opinion of Dr. Jain, precludes all full-time employment. (Tr. 17, 408-10.)

The ALJ discounted Dr. Jain's opinion, assigning it "little" weight because she concluded

8

that it "is without substantial support from the other evidence of record because there is no evidence that Dr. Jain used any objective evidence in rendering her opinion and thus, her opinion is less persuasive and inconsistent with the medical record as a whole." (Tr. 17.) However, Plaintiff points to two questionnaires that Dr. Jain completed. (Tr. 404, 440.) On the first questionnaire, dated January 5, 2009, Dr. Jain identified two (undated) MRIs that supported her diagnosis: "MRI l spine" and "MRI t spine." (Tr. 405.) A year later, however, on a questionnaire dated February 11, 2010, Dr. Jain did not identify any laboratory or diagnostic test results that supported her diagnosis. (Tr. 441.) Instead, in response to the question: "Identify the laboratory and diagnostic test results which demonstrate and/or support your diagnosis[,]" Dr. Jain responded: "N.A." (Tr. 441.)

The ALJ determined that Dr. Jain did not use any objective evidence in rendering her opinion thereby according Jain's opinion "little" weight. (Tr. 17.) For example, the ALJ noted a normal October 23, 2008 MRI of the lumbosacral spine. (Tr. 14, 201.) Further, after a follow-up visit on November 7, 2008, physiatrist Dr. Jai Duck Liam advised Plaintiff that she should "return to work." (Tr. 14, 200.) In October 2009, Plaintiff told Dr. Girish Mangalick that "her shoulder girdle and spine pain [felt] a whole lot better." (Tr. 14, 418.) Upon examination of Plaintiff in October 2009, Dr. Mangalick noted that Plaintiff "showed good range of movements over the neck and thoracic spine" and "could flex and extend well." (*Id*.) After reviewing the evidence, the ALJ further concluded that there was nothing in the record indicating severe stenosis, motor weakness, or poor ambulation. (Tr. 14.) Given the ALJ's opinion that assessed the MRI results, Plaintiff's statements about her condition, examinations by other physicians during the relevant time-period, and lack of objective evidence supporting Jain's statements, this Court cannot say that the ALJ erred in according less than controlling weight to Dr. Jain's opinion.

9

If an ALJ chooses not to give a treating source controlling weight, the ALJ must still "apply certain factors—namely, the length of the treatment relationship and the frequency of examination, the nature and extent of the treatment relationship, supportability of the opinion, consistency of the opinion with the record as a whole, and the specialization of the treating source—in determining what weight to give the opinion." *Wilson*, 378 F.3d at 544 (citing C.F.R. § 404. 1527(d)). This Court is aware, however, that an ALJ is not required to discuss *every* factor listed in 20 C.F.R. § 404.1527(d). *See, e.g., Klimas v. Comm'r of Soc. Sec.*, No. 1:10-cv-666, 2012 WL 691702, at *1 (W.D. Mich. Mar.1, 2012); *Paseka v. Comm'r of Soc. Sec.*, No. 1:09-CV-1073, 2011 WL 883701, at * 1-2 (W.D. Mich. Mar. 11, 2011).

Normally, an ALJ's failure to follow this rule is an error which may constitute a lack of substantial evidence. "[C]ourts have remanded the Commissioner's decisions when they have failed to articulate 'good reasons' for not crediting the opinion of a treating source, as § 1527(d)(2) requires." *Id.* This error, however, is not always dispositive, and may be considered "harmless error" if: "(1) a treating source's opinion is so patently deficient that the Commissioner could not possibly credit it; (2) if the Commissioner adopts the opinion of the treating source or makes findings consistent with the opinion; or (3) where the Commissioner has met the goal of § 1527(d)(2) . . . even though she has not complied with the terms of the regulation." *Cole v. Astrue*, 661 F.3d 931, 940 (6th Cir.2011) (quoting *Wilson*, 378 F.3d at 547) (internal citation omitted). Nevertheless, the "ALJ's failure to follow the Agency's procedural rule does not qualify as harmless error where [the court] cannot engage in 'meaningful review' of the ALJ's decision." *Blakley v. Comm'r Of Soc. Sec.*, 581 F.3d 399, 409 (6th Cir.2009) (quoting *Wilson*, 378 F.3d at 544).

Here, the Court is able to engage in a meaningful review of why the ALJ decided to discount Dr. Jain's opinion. For example, ALJ LaRiccia acknowledges and discusses the treatment relationship between Plaintiff and Dr. Jain in her analysis and when assigning weight to Dr. Jain's opinion. (Tr. 15-17.) She discusses Dr. Jain's treatment relationship with Plaintiff during the relevant period as well as Jain's medical source statements that significantly limit Plaintiff's ability to work. (*Id.*) The ALJ raises a legitimate concern regarding the dearth of objective medical evidence underlying Dr. Jain's medical source statements as Dr. Jain identified only two (undated) MRIs to support her January 5, 2009 statement (Tr. 404), and no objective evidence to support the February 11, 2010 statement (Tr. 440). *See, e.g., Watson v. Comm'r of Soc. Sec.*, No. 12-10496, 2013 WL 1788576, *8 (E.D. Mich. Mar. 11, 2013) ("The SSA will give a treating source's opinion 'controlling weight' unless it is either not 'well-supported by medically acceptable clinical and laboratory diagnostic techniques' or is 'inconsistent with the other substantial evidence in [the] case record.'" (quoting 20 C.F.R. § 404.1527(d)(2)). Further, as discussed above, ALJ LaRiccia uses specific examples of why Dr. Jain's opinion is not supportable, namely that she failed to use any objective evidence to support her opinion and thus her opinion was less persuasive and inconsistent with the medical record as a whole. (Tr. 17.) As examples of these inconsistencies, ALJ LaRiccia cited a normal MRI (Tr. 14), Dr. Liam's recommendation that Plaintiff could "return to work (*id.*), Plaintiff's self-reports to Dr. Mangalick that her shoulder girdle and spine pain felt better (*id.*), and Dr. Mangalick's notes that Plaintiff showed good range of motion and could flex and extend well (*id.*). ALJ LaRiccia also noted that her review of the record revealed no evidence that Plaintiff was suffering from severe stenosis, motor weakness, or poor ambulation. (*Id.*)

Accordingly, the Court finds that while ALJ LaRiccia did not strictly follow the "good

11

reasons" requirement of § 1527(d)(2), she met the goal of the rule and this Court was able to engage in a meaningful review. Thus, any error in this regard was harmless.

### 2. *The ALJ's Credibility Analysis*

In her second claim of error, Plaintiff argues that the ALJ improperly evaluated her credibility—specifically that the ALJ discounted her testimony even though it was consistent with the record. (Pl.'s Mot. Summ. J. at 14-18.) Plaintiff also claims that the ALJ improperly assessed the veracity of her testimony after determining the RFC, rather than assessing her credibility prior to making the RFC determination. (*Id*. at 15) (citing 20 C.F.R. § 404.1529(c)(4)).

An ALJ's credibility assessment proceeds in two steps. *Baranich v. Barnhart*, 128 F. App'x 481, 487 (6th Cir. 2005). First, the ALJ determines whether the claimant suffers from a "medically determinable impairment[] that could reasonably be expected to produce [the claimant's] symptoms." 20 C.F.R. § 404.1529(c)(1); *Baranich*, 128 F. App'x at 487. If so, the ALJ then evaluates the "intensity and persistence" of the claimant's symptoms. 20 C.F.R. § 404.1529(c)(1). At this second step, the ALJ should not reject a claimant's "statements about the intensity and persistence of [her] pain or other symptoms or about the effect [her] symptoms have on [her] ability to work solely because the available objective medical evidence does not substantiate [the claimant's] statements." 20 C.F.R. § 404.1529(c)(2); *see also* S.S.R. 96-7p, 1996 WL 374186. To the contrary, the regulations list other considerations that should inform the ALJ's credibility assessment. 20 C.F.R. § 404.1529(c)(3). Although an ALJ need not explicitly discuss every factor, *Cross v. Comm'r of Soc. Sec.*, 373 F. Supp. 2d 724, 733 (N.D. Ohio 2005), an ALJ's "decision must contain specific reasons for the finding on credibility, supported by the evidence in the case record, and must be sufficiently specific to make clear to the individual and to any subsequent reviewers the

weight the adjudicator gave to the individual's statements and the reasons for that weight," S.S.R. 96-7p, 1996 WL 374186 at *2.

Within the above framework, an ALJ's credibility analysis warrants considerable deference: a court is to accord an "ALJ's determinations of credibility great weight and deference particularly since the ALJ has the opportunity, which [a court does] not, of observing a witness's demeanor while testifying." *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 476 (6th Cir. 2003); *see also Daniels v. Comm'r of Soc. Sec.*, 152 F. App'x 485, 488 (6th Cir. 2005) ("Claimants challenging the ALJ's credibility findings face an uphill battle."). Further, an ALJ's credibility analysis is subject to harmless error review. *Ulman v. Comm'r of Soc. Sec.*, 693 F.3d 709, 714 (6th Cir. 2012) (citing *Carmickle v. Comm'r of Soc. Sec.*, 533 F.3d 1155, 1162 (9th Cir. 2008), with approval); *Carmickle*, 533 F.3d at 1162 ("So long as there remains substantial evidence supporting the ALJ's conclusions on credibility and the error does not negate the validity of the ALJ's ultimate credibility conclusion, such is deemed harmless and does not warrant reversal." (quotation marks omitted and punctuation altered)).

Here, ALJ LaRiccia concluded "that the claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not credible to the extent they are inconsistent with the above residual functional capacity assessment." (Tr. 15, 17.) Plaintiff argues that ALJ LaRiccia's use of "boilerplate language" in her credibility assessment failed to provide a reasonable basis for her rejection of Plaintiff's testimony. But, a review of the ALJ's credibility assessment demonstrates that ALJ LaRiccia assessed the objective evidence and how that evidence compared with Plaintiff's testimony regarding her limitations. (Tr. 15-16.)

While objective evidence is not the only relevant factor when making credibility determinations, it remains a "useful indicator" for an ALJ when evaluating the credibility of a plaintiff's symptoms. *See* 20 C.F.R. § 404.1529(c)(2) ("Objective medical evidence of this type is a useful indicator to assist us in making reasonable conclusions about the intensity and persistence of your symptoms and the effect those symptoms, such as pain, may have on your ability to work.") With respect to the objective evidence, ALJ LaRiccia concluded:

> In terms of the claimant's alleged cervical radiculitis with mild degenerative arthritis changes, a review of the longitudinal medical record supports the claimant's alleged impairment, but this limitation is consistent with the above residual functional capacity of light work. The claimant reported that she injured her back at work in August of 2007. (Exhibit 5F, pg. 63). A 2008 Magnetic Resonance Imaging (MRI) showed, "quite significant arthritic changes and also T12 compression deformity minimally." (*Id.*). On July 1, 2008, the claimant saw Dr. Liem who recommended physical therapy to treat her back pain. (Exhibit 2F, pg. 9). Upon examination that day, the claimant displayed, "no localized muscle weakness" in both arms but did show "diminished sensation to the tip of the last two fingers of both hands." (*Id.*). Additionally, there was no muscle weakness in the lower extremities and no atrophy in any of the extremities. (*Id.*). An MRI from August of 2008 showed, "a bulging disc at the level of C4-C5 and C5-C6 along with uncovertebral hypertrophy." (Exhibit 12F, pg. 2). Additionally, the MRI showed that the claimant had foraminal stenosis, but no central stenosis. (*Id.*). However, an MRI done on October 23, 2008 indicated a, "normal MRI of the lumbosacral spine." (Exhibit 2F, pg. 5). After seeing Dr. Liem on November 4, 2008, he recommended that the claimant return to work, and the claimant also reported that she stopped going to physical therapy because it was not helping her. (*Id.* at 4). Records indicate that the claimant did attempt to return to work, but in December of 2008, she was fired from her job. (Exhibit l4F, pg. 14).
>
> From April 2009-June 2009, the claimant sought chiropractic treatment for her back. (Exhibit 7F, pgs. 8-13). However, there are no other records to indicate if the claimant continued with this type of treatment. An MRI from July 26, 2009 showed, "multilevel degenerative disc disease," including, "mild to moderate foraminal stenosis" at multiple levels of the cervical spine. (Exhibit 11F, pg.

> 10). In August of 2009 the claimant's neck had improved range of motion with only minimal tenderness. (*Id*. at 6). In October of 2009, the claimant told Dr. Mangalick that, "her shoulder girdle and spine pain is a whole lot better," and upon examination the claimant, "showed good range of movements over the neck and thoracic spine. She could flex and extend well." (*Id*. at 5).
>
> . . .
>
> Therefore, although the medical evidence of record supports the claimant's allegations of back pain associated with her cervical radiculitis, the residual functional capacity determined above, which limits the claimant to light work, is consistent with the medical record as a whole.

(Tr. 15-16.)

Contrary to Plaintiff's suggestion, this Court concludes that ALJ LaRiccia considered the record evidence and reasonably determined that the medical evidence did not support the nature and extent of Plaintiff's allegations regarding her limitations.

The ALJ also reasonably questioned Plaintiff's testimony at the administrative hearing. For example, Plaintiff testified that she could only walk as long as a "football field," or could only sit or stand 15 minutes, and must lie down one time per hour. (Tr. 29-30, 34, 36.) The ALJ discounted these allegations because Plaintiff did not discuss these disabling limitations with her doctors. Plaintiff argues that she "had no reason to tell her physicians how long she could perform specific functions." (Pl.'s Mot. Summ. J. at 17.) But, "[i]n the ordinary course, when a claimant alleges pain so severe as to be disabling, there is a reasonable expectation that the claimant will seek examination or treatment. A failure to do so may cast doubt on a claimant's assertions of disabling pain." *Strong v. Soc. Sec. Admin.,* 88 F. App'x 841, 846 (6th Cir. 2004). The ALJ also noted that Plaintiff did not seek more aggressive forms of treatment for her back pain. SSR 96-7p, 1996 WL 374186, at *7 ("[T]he individual's statements may be less credible if the level or frequency of treatment is

15

inconsistent with the level of complaints. . . ."). Here, the ALJ noted that Plaintiff stopped taking epidural shots in January 2010 despite reporting that these shots were effective. (Tr. 434-39.) Plaintiff suggests that it is improper for the ALJ to draw any conclusions as to why Plaintiff did not seek further treatment; however, Plaintiff testified that she did not seek surgical intervention because orthopaedic surgeon Dr. Nilesh Patel did not recommend it. (Tr. 34.) The ALJ also questioned Plaintiff's use of a cane. While Plaintiff is correct that a prescription for a cane is not required, the ALJ determined that no medical documentation existed in the record to support the need for a hand-held assistive device. SSR-96-9p, 1996 WL 374185, at *7 ("there must be medical documentation establishing the need for a hand-held assistive device to aid in walking or standing and describing the circumstances for which it is needed (i.e., whether all the time, periodically, or only in certain situations, distance and terrain; and any other relevant information.")).

In sum, Plaintiff essentially asks the Court to re-weigh the evidence; however, this Court's scope of review is limited, and the Court will not disturb the ALJ's credibility determination absent a compelling reason. *Sims v. Comm'r of Soc. Sec*, 406 F. App'x 977, 981 (6th Cir. 2011). The Court finds no such compelling reason here.

## IV. CONCLUSION AND RECOMMENDATION

For the reasons set forth above, this Court concludes that substantial evidence supports the decision of the administrative law judge. The Court therefore RECOMMENDS that Plaintiff's Motion for Summary Judgment (Dkt. 11) be DENIED, that Defendant's Motion for Summary Judgment (Dkt. 13) be GRANTED, and that, pursuant to 42 U.S.C. § 405(g), the decision of the Commissioner of Social Security be AFFIRMED.

## V. FILING OBJECTIONS

The parties to this action may object to and seek review of this Report and Recommendation within fourteen (14) days of service of a copy hereof as provided for in 28 U.S.C. § 636(b)(1). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140 (1985); *Frontier Ins. Co. v. Blaty*, 454 F.3d 590, 596 (6th Cir. 2006); *United States v. Sullivan*, 431 F.3d 976, 984 (6th Cir. 2005). The parties are advised that making some objections, but failing to raise others, will not preserve all the objections a party may have to this Report and Recommendation. *McClanahan v. Comm'r Soc. Sec.*, 474 F.3d 830, 837 (6th Cir. 2006); *Frontier*, 454 F.3d at 596-97. Objections are to be filed through the Case Management/Electronic Case Filing (CM/ECF) system or, if an appropriate exception applies, through the Clerk's Office. *See* E.D. Mich. LR 5.1. A copy of any objections is to be served upon this magistrate judge but this does not constitute filing. *See* E.D. Mich. LR 72.1(d)(2). Once an objection is filed, a response is due within fourteen (14) days of service, and a reply brief may be filed within seven (7) days of service of the response. E.D. Mich. LR 72.1(d)(3), (4).

                                                                       s/Laurie J. Michelson
                                                                       LAURIE J. MICHELSON
                                                                       UNITED STATES MAGISTRATE JUDGE

Dated: January 13, 2014

### CERTIFICATE OF SERVICE

The undersigned certifies that a copy of the foregoing document was served on the attorneys and/or parties of record by electronic means or U.S. Mail on January 13, 2014.

                                                                       s/Jane Johnson
                                                                       Deputy Clerk